**MARR, et ux v. JASPER, Tax Collector, et al.**
No. 70289.

Circuit Court, Pinellas County.
March 23, 1965.

R. M. Cargell of Cargell & Elliott, St. Petersburg Beach, for plaintiffs.

James A. Roman, Assistant County Attorney, for defendants.

C. RICHARD LEAVENGOOD, Circuit Judge.

*Final decree:* This cause came on to be heard on the complaint, the answer thereto, and testimony; and the court being advised in the premises, finds —

That the only evidence offered in this cause by either party consisted of the depositions of the plaintiffs, William Marr and Freda Marr, and affidavits filed by the plaintiffs; from these the court finds that Mrs. Marr is a citizen of Sackville, New Brunswick, Canada, and is temporarily in this country on a visa and that she is required to report to the Attorney General during January of each year in accordance with federal law.

The testimony shows that Mr. Marr was formerly in business in Detroit, Michigan; that during World War II he took American citizenship; that upon his retirement from business he went back to Canada with the intention of resuming his residence in Canada. He took with him all of his movable property and placed it in a safety deposit box in Canada. Shortly thereafter, he met Mrs. Marr and married her. At the time that he married her, Mrs. Marr, who was formerly Mrs. Durling, owned a house in South Pasadena, Florida, which had been acquired by her late husband through a lien foreclosure sale which her husband bid in to protect a mortgage which he held on the property. Mr. and Mrs. Marr lived in Canada for a year or so in a rented house after which they bought a house in Sackville, which they occupy as their home for six months of every year, the Canadian home being worth considerably more than the property in Florida. They have been trying since 1958 to sell the house in St. Petersburg. They also jointly own business rental property in Sackville.

The testimony shows that Mr. and Mrs. Marr filed federal income tax returns on the usual "1040" individual tax return, which return asks if the parties are citizens of the United States and in which the filled-in form indicates their "home address" to be in Pinellas County, Florida. Mr. Marr explained this by stating that he was advised by an agent of the Internal Revenue Service in Detroit to give St. Petersburg as his address for the reason that he would be in St. Petersburg at tax filing time, since it was his custom to visit in St. Petersburg during the winter months. Mrs. Marr also signed the return, so it is obvious that so far as she is concerned such a statement was in error because

being in this country on a visa, she could not be a citizen of the United States or a permanent resident thereof.

They further explained that their returns were prepared by Barney Sullivan, a tax consultant of Gulfport, Florida; that they gave him all of the information concerning their income and any any other matters; that Mr. Sullivan prepared the returns and told them to sign them. Upon Mr. Sullivan's instructions they did so.

Mr. Marr also testified that upon the advice of Mr. Sullivan, he signed intangible tax returns for three separate years and that Mr. Sullivan sent them to a Mr. Robeson of the comptroller's office in an effort to compromise the differences existing between the Marrs and the taxing authorities of the state of Florida. It is evident that since the tax collector of Pinellas County has these returns, that if they were filed with the tax collector of Pinellas County, it was done by Mr. Robeson and not by Mr. and Mrs. Marr.

Mr. Marr also testified that he owned an automobile which bore Florida tags and he had a Florida driver's license, while Mrs. Marr has a Canadian driver's license.

Mr. Marr testified that the tags came with the automobile purchased in St. Petersburg; that he purchased an automobile almost every year and when he renewed the tags, he did so in St. Petersburg rather than in Canada because it was simpler than to try to obtain Canadian tags, and that he obtained a Florida driver's license for the same reason.

He testified that he had a checking account in Sackville, a savings account there, and a safety deposit box there and that all of the evidence of intangible property, such as stocks and bonds, was in the safety deposit box in New Brunswick; that he had a checking account in St. Petersburg and three savings accounts and a safety deposit box and that at least one of the savings accounts was opened here because of the higher rate of interest paid by one of the local banks.

He also testified that he had never applied for homestead exemption in Florida nor registered to vote in Florida because he did not consider himself a resident of Florida and that had he attempted to obtain homestead exemption or vote in Florida, he would have been considered a resident of Florida when, in fact, he was not.

He testified that he spent four of the cold months in St. Petersburg, a couple of months visiting friends in the area of Detroit, Michigan, and the remainder of the time in Sackville, in New Brunswick, Canada.

The court is of the opinion that a person's residence is where he says it is, unless, of course, his actions are such as to overcome his statements. The court is of the further opinion that the defendants in this case have failed to overcome the presumption created by the testimony of Mr. and Mrs. Marr that they own a home in Canada which they consider to be their home and that they are residents of Canada; that their acts in owning a house in St. Petersburg, having bank accounts there, and buying automobiles in Florida with Florida tags are not inconsistent with their being Canadian residents. There are at least two circumstances in which non-residents are *required* to obtain driver's licenses and auto tags.

It is therefore ordered, adjudged, and decreed —

That the plaintiffs are residents of the Dominion of Canada and are not residents of the State of Florida.

That the intangible personal property owned by these plaintiffs is not subject to taxes levied under the purported authority of chapter 199, Florida Statutes 1963.

That the executions numbered 542, 543, and 544 are null, void, and of no effect and that the same be and are hereby removed from the public records of Pinellas County as they constitute a cloud on the plaintiffs' real property.

That Mac S. Haines, as tax assessor, and his successors in office are hereby permanently enjoined from assessing or attempting to assess any tax upon the plaintiffs' intangible personal property for the year 1963 or subsequent years, as long as the plaintiffs are nonresidents of Florida.

That O. Sanford Jasper, as tax collector, and his successors in office are hereby permanently enjoined from collecting or attempting to collect said intangible personal property tax levied against these plaintiffs for the years 1960, 1961, 1962 or any subsequent year, as long as the plaintiffs are non-residents of Florida.

That Don Genung, as sheriff of Pinellas County, and his successors in office are hereby permanently enjoined from selling or attempting to sell plaintiffs' real property described in the complaint as — lot 12, Pasadena Shores, according to plat thereof recorded in plat book 34, page 67, public records of Pinellas County, Florida.

That O. Sanford Jasper, as tax collector of Pinellas County, is hereby mandatorily required to cancel all tax executions recorded against these plaintiffs or against their real property described above.

That the plaintiffs recover of the defendants their costs herein which are hereby taxed in the sum of $54.60.

The court retains jurisdiction to enforce the executory portions of this decree.